Citation Nr: 1550126 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 12-31 905 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUE

Entitlement to an initial compensable rating for bilateral hearing loss.


REPRESENTATION

Appellant represented by: Georgia Department of Veterans Services


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

H. Papavizas, Associate Counsel


INTRODUCTION

The Veteran had active service from July 1965 to June 1969. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a June 2011 rating decision issued by the Department of Veterans Affairs (VA), Regional Office (RO), in Atlanta, Georgia, which granted service connection for bilateral hearing loss, assigning an initial non-compensable rating from May 5, 2011; and denied service connection for tinnitus. 

In February 2015, the Veteran testified during a travel Board hearing held before the undersigned Veterans Law Judge. A transcript of that hearing is of record. At that time, it did not appear that the Veteran again sought to pursue a claim of entitlement to a total rating based on individual unemployability due to service-connected disabilities (TDIU), which was also denied in the June 2011 rating decision and was not appealed. Additional evidence was submitted at the hearing which was accompanied by a waiver. 

In May 2015, the Board granted the Veteran's claim for service connection for tinnitus and remanded the issue of bilateral hearing loss for further development. As will be discussed herein, the Board finds that the agency of original jurisdiction (AOJ) has substantially complied with the remand orders with respect to the claim for an initial compensable rating for bilateral hearing loss and no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002).

In July 2015, the RO granted service connection for tinnitus with an evaluation of 10 percent, effective May 5, 2011. As such award of service connection is a full grant of the benefit sought on appeal and the Veteran has not disputed either the rating assigned or effective date of the rating, such issue is no longer before the Board for consideration. See Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1977).

This appeal has been processed utilizing the Virtual VA and Veterans Benefits Management System (VBMS) paperless, electronic claims processing systems.


FINDING OF FACT

For the entire appeal period, the Veteran has no worse than Level I right hearing and no worse than Level I to Level IV left ear hearing.


CONCLUSION OF LAW

The criteria for an initial compensable rating for bilateral hearing loss are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1-4.10, 4.85, Diagnostic Code 6100 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1).

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), the United States Court of Appeals for Veterans Claims (Court) held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include (1) Veteran status, (2) existence of a disability, (3) a connection between the Veteran's service and the disability, (4) degree of disability, and (5) effective date of the disability. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the Court held that a VCAA notice, as required by 38 U.S.C.A. § 5103(a), must be provided to a claimant before the initial unfavorable AOJ decision on the claim for VA benefits. 

In the instant case, a letter dated May 2011, sent prior to the June 2011 rating decision on appeal, advised the Veteran of the evidence and information necessary to substantiate his underlying service connection claim for bilateral hearing loss, as well as his and VA's respective responsibilities in obtaining such evidence and information. Additionally, the letter advised him of the information and evidence necessary to establish a disability rating and effective date in accordance with Dingess/Hartman, supra.

Following the award of service connection in the June 2011 rating decision, the Veteran appealed with respect to the propriety of the initially assigned noncompensable rating for his bilateral hearing loss. VA's General Counsel has held that no VCAA notice is required for such downstream issues. VAOPGCPREC 8-2003, 69 Fed. Reg. 25180 (May 5, 2004). In addition, the Board notes that the Court held that "the statutory scheme contemplates that once a decision awarding service connection, a disability rating, and an effective date has been made, 
§ 5103(a) notice has served its purpose, and its application is no longer required because the claim has already been substantiated." Dingess/Hartman, 19 Vet. App. at 490. In this case, the Veteran's claim for service connection for his bilateral hearing loss was granted and an initial rating was assigned in the June 2011 rating decision on appeal. Therefore, because the Veteran has appealed the initially assigned rating, no additional 38 U.S.C.A. § 5103(a) notice is required because the purpose that the notice is intended to serve has been fulfilled. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

Relevant to the duty to assist, the Veteran's service treatment records as well as post-service VA and private medical records have been obtained and considered. In this regard, the Board notes that an April 2011 VA treatment records indicates that an audiogram was performed; however, such audiogram is not of record. The Board finds no prejudice to the Veteran in proceeding with a decision on his claim at this time as the April 2011 record pre-dates the effective date of the award of service connection, i.e., May 5 2011. Moreover, he was subsequently afforded VA examinations in June 2011 and June 2015, both of which contain complete audiometric findings. Therefore, the Board finds that, while such audiogram is not of record, there is no prejudice to the Veteran in proceeding with a decision on his claim at this time. Furthermore, he has not identified any additional, outstanding records that have not been requested or obtained. 

The Veteran was also afforded VA examinations in June 2011 and June 2015. The Board finds that the examinations are adequate to evaluate the Veteran's service-connected bilateral hearing loss as they include an interview with the Veteran, review of the record, and full audiological examination, addressing the relevant rating criteria. Moreover, the Veteran has not alleged a worsening of his bilateral hearing loss since the June 2015 VA examination. In this regard, while he and his representative have claimed that such disability is worse than the currently assigned noncompensable rating, they have not contended that the condition has increased in severity since the June 2015 VA examination. Palczewski v. Nicholson, 21 Vet. App. 174 (2007) (mere passage of time not a basis for requiring of new examination).

In Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007), the Court held that, relevant to VA audiological examinations, in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. In the instant case, the June 2011 VA examiner noted that the Veteran had difficulty hearing television and confused words in conversations, and the June 2015 VA examiner indicated that the Veteran had difficulty understanding conversation. While neither examiner offered additional details, neither the Veteran nor his representative alleged any prejudice resulting from any deficiency in the examinations. Furthermore, the Board finds that no prejudice results to the Veteran as the remainder of the evidence more fully addresses such effects and, therefore, the Board may proceed with a decision. 

In this regard, the Board notes that the Court's rationale in requiring an examiner to consider the functional effects of a Veteran's hearing loss disability involves the potential application of 38 C.F.R. § 3.321(b) in considering whether referral for an extra-schedular rating is warranted. Specifically, the Court noted that, "unlike the rating schedule for hearing loss, § 3.321(b) does not rely exclusively on objective test results to determine whether a referral for an extra[-]schedular rating is warranted. The Secretary's policy [requiring VA audiologists to describe the effect of a hearing disability on a Veteran's occupational functioning and daily activities] facilitates such determinations by requiring VA audiologists to provide information in anticipation of its possible application." Id. at 455. In addition to the findings noted at the June 2011 and June 2015 VA examinations, VA treatment records and the Veteran's statements, to include at his February 2015 Board hearing, reflects that he has to "crank up" loud the television to hear it and reads lips to try to understand what people are saying. 

Therefore, the Board finds that no prejudice results to the Veteran in the Board proceeding with a decision at this time as the functional effects of his bilateral hearing loss disability are adequately addressed by the record as a whole, to include the June 2011 and June 2014 VA examinations, and are sufficient for the Board to consider whether referral for an extra-schedular rating is warranted under 38 C.F.R. § 3.321(b). As such, the Board finds that the examinations of record are adequate to adjudicate the Veteran's initial rating claim and no further examination is necessary.

Moreover, based on the foregoing, the Board determines that, with respect to the Veteran's claim for a compensable rating of his bilateral hearing loss disability, the AOJ has substantially complied with the May 2015 remand directives by requesting that the Veteran identify any healthcare provider that had treated him for bilateral hearing loss, obtaining recent available VA medical records, providing a VA examination so as to determine the nature and severity of his bilateral hearing loss, and readjudicating the instant claim in a Julye 2015 supplemental statement of the case and, as such, that no further action is necessary in this regard. See D'Aries, supra.

Additionally, in February 2015, the Veteran was provided an opportunity to set forth his contentions during the hearing before the undersigned Veterans Law Judge. In Bryant v. Shinseki, the Court held that 38 C.F.R. § 3.103(c)(2) requires that the RO Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010).

Here, during the February 2015 hearing, the undersigned Veterans Law Judge enumerated the issue on appeal. Also, information was solicited regarding the nature and severity of the Veteran's bilateral hearing loss disability, to include statements concerning his difficulty understanding speech, his use of hearing aids, and his attempts to read lips to understand people as well as the impact such has on his daily life and any employment. Therefore, not only was the issue "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. Id. at 497. Furthermore, additional development was undertaken subsequent to the hearing in order to ensure that all necessary evidence was of record, to include obtaining outstanding records and affording the Veteran a VA examination so as to determine the current nature and severity of his bilateral hearing loss. As such, the Board finds that, consistent with Bryant, the undersigned Veterans Law Judge complied with the duties set forth in 38 C.F.R. 3.103(c)(2) and that the Board may proceed to adjudicate the claim based on the current record.

Thus, the Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claim.

II. Analysis

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran's favor. 38 C.F.R. § 4.3. 

Where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibits symptoms that would warrant different evaluations during the course of the appeal, the assignment of staged ratings is appropriate. Fenderson v. West, 12 Vet. App. 119 (1999).

The Veteran's service-connected bilateral hearing loss is currently assigned a noncompensable rating under 38 C.F.R. § 4.85, Diagnostic Code 6100, effective May 5, 2011. The Veteran contends that his hearing disability is worse than the currently assigned evaluation. Therefore, he alleges that he is entitled to an initial compensable rating for such disability. 

Ratings of hearing loss range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of speech discrimination tests combined with the average hearing threshold levels as measured by pure tone audiometry tests in the frequencies 1000, 2000, 3000, and 4000 cycles per second. To rate the degree of disability for service-connected hearing loss, the Rating Schedule has established eleven auditory acuity levels, designated from Level I, for essentially normal acuity, through Level XI, for profound deafness. 38 C.F.R. § 4.85(h), Table VI. In order to establish entitlement to a compensable rating for hearing loss, it must be shown that certain minimum levels of the combination of the percentage of speech discrimination loss and average pure tone decibel loss are met. The assignment of disability ratings for hearing impairment is derived by a mechanical application of the Rating Schedule to the numeric designations assigned after audiometric evaluations are rendered. Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). 

The criteria for rating hearing impairment use controlled speech discrimination tests (Maryland CNC) together with the results of pure tone audiometry tests. These results are then charted on Table VI, Table VIA in exceptional cases as described in 38 C.F.R. § 4.86, and Table VII, as set out in the Rating Schedule. 38 C.F.R. § 4.85. An exceptional pattern of hearing loss occurs when the pure tone threshold at 1000, 2000, 3000, and 4000 Hertz is 55 decibels or more, or when the pure tone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz. 38 C.F.R. § 4.86.

VA treatment records reflect that, in April 2011, prior to the effective date of service connection of May 5, 2011, the Veteran was seen for a hearing evaluation. At such time, he reported bilateral hearing loss from military service which began approximately three years prior. Normal hearing at 250-2000 Hertz bilaterally with a mild to severe right ear hearing loss and a mild to moderately severe left hear hearing loss at 3000-8000 Hertz. Speech reception thresholds were established within normal limits: speech discrimination was 76 percent at the right ear and 80 percent at the left ear. Hearing aids were recommended. However, the Board notes that because no particularized audiometric findings are noted and because it is unclear whether the Maryland CNC test was used to determine speech discrimination, the April 2011 VA audiology findings may not be utilized in evaluating the Veteran's hearing loss for compensation purposes. See 38 C.F.R. § 4.85(a).

A June 2011 VA audiological examination revealed the following pure tone thresholds, measured in decibels:




HERTZ



1000
2000
3000
4000
Avg.
RIGHT
15
45
75
70
51.25
LEFT
20
45
65
65
48.75

Maryland CNC testing revealed speech recognition ability as follows: (1) initial testing yielded scores of 94 percent for the right ear and 72 percent for the left ear, and (2) a "best performance" test result revealing scores of 94 percent for the right ear and 92 percent for the left ear. No exceptional pattern of hearing loss was demonstrated. 

Using the audiogram results and scores from the "best performance" of the Maryland CNC test results equate to Level I hearing bilaterally, using Table VI. 38 C.F.R. § 4.85. Alternatively, using the audiogram results and scores from the initial test scores of the Maryland CNC test results equate to Level I hearing for the right ear and Level IV hearing for the left ear, using Table VI. 38 C.F.R. § 4.85. Applying the percentage ratings for hearing impairment found in Table VII, using results from either the "best performance" or the initial test results of the Maryland CNC test, results in a noncompensable disability rating: Level I hearing bilaterally results in a noncompensable rating; and Level I right ear hearing and Level IV left ear hearing also results in a noncompensable rating. 38 C.F.R. § 4.85. 

During June 2011 examination, the Board further notes that Veteran reported the following functional impairment from hearing loss: difficulty hearing television and confusing words in conversations.

A January 2014 private audiogram reflects that the Veteran was diagnosed with bilateral high frequency sensorineural hearing loss bilaterally. The Veteran submitted two reports of this audiogram: the first report contains only a graph of audiometric results; the second report contains a numerical chart of those same audiometric results. The second report of the January 2014 audiogram reflects following pure tone thresholds, measured in decibels:




HERTZ



1000
2000
3000
4000
Avg.
RIGHT
35
50
70
65
60
LEFT
40
40
55
60
60

Word recognition scores were noted to be 85 percent in the right ear and 100 percent in the left ear; however, it is unclear whether the Maryland CNC test was used. Consequently, such findings may not be utilized in evaluating the Veteran's hearing loss for compensation purposes. See 38 C.F.R. § 4.85(a). 

A June 2015 VA audiological examination revealed the following pure tone thresholds, measured in decibels:




HERTZ



1000
2000
3000
4000
Avg.
RIGHT
10
55
75
70
53
LEFT
15
40
65
60
45

Maryland CNC testing revealed scores of 96 percent for the right ear and 88 percent for the left year. No exceptional pattern of hearing loss was demonstrated. These audiometry test results equate to Level I right ear hearing and Level II left ear hearing, using Table VI. 38 C.F.R. § 4.85. Applying the percentage ratings for hearing impairment found in Table VII, with Level I hearing for the right ear and Level II for the left ear, results in a noncompensable disability rating. 38 C.F.R. § 4.85. Finally, the examiner found that the Veteran's bilateral hearing loss had some functional effects but noted only that the Veteran had difficulty understanding conversation.

The Board further finds that the evidence of record reflects no certification of language difficulties, inconsistent speech audiometry scores, or pure tone threshold findings of 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz as to warrant consideration as an exceptional pattern of hearing impairment. See 38 C.F.R. § 4.86(b). 

Therefore, the Board finds that, for the entire appeal period, the Veteran has no worse than Level I right hearing and no worse than Level I to Level IV left ear hearing. Accordingly, the Veteran is not entitled to an initial compensable rating for his bilateral hearing loss, even when the rating is calculated using the most favorable rating for left ear hearing (Level IV).

To the extent that the Veteran contends that his hearing loss is more severe than currently evaluated, the Board observes that the Veteran, while competent to report symptoms such as difficulty understanding speech in the presence of background noise or when he is not face-to-face with the speaker, he is not competent to report that his hearing acuity is of sufficient severity to warrant a compensable evaluation under VA's tables for rating hearing loss disabilities because such an opinion requires medical expertise (training in evaluating hearing impairment), which he has not been shown to have. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Charles v. Principi, 16 Vet. App. 370 (2002); Woehlaert v. Nicholson, 21 Vet. App. 456 (2007). 

Despite the foregoing, the Board acknowledges the Veteran's reports of difficulty understanding speech, use of hearing aids, and attempts to read lips. Even after considering such contentions as to the effects of the disability on his daily life, the Board finds that the criteria for a compensable rating are not met. See Lendenmann, supra (assignment of disability ratings for hearing impairment are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are rendered). 

The Board has considered whether staged ratings under Fenderson, supra, are appropriate for the Veteran's service-connected bilateral hearing loss; however, the Board finds that his symptomatology has been stable throughout the appeal period. Therefore, assigning staged ratings for such disability is not warranted.

Additionally, the Board has contemplated whether the case should be referred for extra-schedular consideration. An extra-schedular disability rating is warranted if the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that application of the regular schedular standards would be impracticable. 38 C.F.R. § 3.321(b)(1). 

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court explained how the provisions of 38 C.F.R. § 3.321 are applied. Specifically, the Court stated that the determination of whether a claimant is entitled to an extra-schedular rating under § 3.321 is a three-step inquiry. First, it must be determined whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. In this regard, the Court indicated that there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. 

Second, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as "marked interference with employment" and "frequent periods of hospitalization." Third, when an analysis of the first two steps reveals that the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Id. 

The Board has carefully compared the level of severity and symptomatology of the Veteran's service-connected bilateral hearing loss and tinnitus with the established criteria found in the rating schedule. While the Veteran has described the functional impairment he experiences as a result of his bilateral hearing loss, to include difficulty hearing the television, difficulty understanding conversation (for example, confusing words), and his attempts to read lips, the Board finds that the Veteran's bilateral hearing loss symptomatology are fully addressed by the rating criteria under which such disability is rated. In this regard, the decibel loss and speech discrimination ranges designated for each level of hearing impairment in Tables VI and VIA were chosen in relation to clinical findings of the impairment experienced by Veterans with certain degrees and types of hearing disability. In support of this finding, the Board points to the regulatory history of 38 C.F.R. §§ 4.85 and 4.86. In this regard, the rating criteria for hearing loss were last revised, effective June 10, 1999. See 64 Fed. Reg. 25206 (May 11, 1999). In forming these revisions, VA sought the assistance of the Veteran's Health Administration (VHA) in developing criteria that contemplated situations in which a Veteran's hearing loss was of such a type that speech discrimination tests may not reflect the severity of communicative functioning these Veterans experienced or that was otherwise an extreme handicap in the presence of any environmental noise, even with the use of hearing aids. VHA had found through clinical studies of Veterans with hearing loss that when certain patterns of impairment are present, a speech discrimination test conducted in a quiet room with amplification of the sounds does not always reflect the extent of impairment experienced in the ordinary environment. The decibel threshold requirements for application of Table VIA were based on the findings and recommendations of VHA. The intended effect of the revision was to fairly and accurately assess the hearing disabilities of Veterans as reflected in a real life industrial setting. 59 Fed. Reg. 17295 (April 12, 1994). Accordingly, the Board finds that functional impairment due to hearing loss that is compounded by difficulty understanding speech in the presence of background noise or when not face-to-face with the speaker is a disability picture that is considered in the current schedular rating criteria.

Consequently, the Board finds that the Veteran's bilateral hearing loss symptomatology is fully addressed by the rating criteria under which his disability is rated. There are no additional symptoms of his bilateral hearing loss that are not addressed by the rating schedule. The Board finds that the rating criteria reasonably describe the Veteran's disability level and symptomatology for his service-connected disability. The rating schedule is adequate to evaluate the Veteran's disability picture. Therefore, the Board need not proceed to consider the second factor, viz., whether there are attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization. Consequently, the Board concludes that referral of this case for consideration of an extra-schedular rating is not warranted. Id.; Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996). 

In Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) is part of an increased rating claim when such claim is expressly raised by the Veteran or reasonably raised by the record. In this case, the record does not reflect, and the Veteran does not allege, that he is unemployable due to his bilateral hearing loss. Rather, the Veteran explained that he worked previously in sales but was forced into retirement in order to be a caregiver to his wife who has cancer. See Hearing Transcript, p. 6. Additionally, the Veteran specifically denied that his hearing loss caused him difficulty when he previously was employed. Id. Therefore, the Board finds that a TDIU is not raised by the record. 

The Board has also considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim for an initial compensable rating for bilateral hearing loss. Therefore, the benefit of the doubt doctrine does not apply in the instant appeal and his initial rating claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 4.3, 4.7. 


ORDER

An initial compensable rating for bilateral hearing loss is denied.



____________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs